GUIDRY, Judge.
In this filiation proceeding, the plaintiff, Jeanne Ruby LeBlanc, wife of Daniel La-Pointe, seeks to have the defendant, Sidney E. LeBlanc, declared her father. The plaintiff was born on November 6, 1941. This suit was timely filed on June 15, 1982, within the time limit provided by Section 2 of Act No. 720 of 1981.[2] From an adverse ruling by the trial court, the plaintiff has taken this devolutive appeal.
FACTS
Plaintiff is the daughter of Ena Duhon, who lives in Milton, Vermilion Parish, Louisiana. Ena Duhon was married but once and then to Paul Langlinais. Mr. Langli-nais died about the year 1932, some seven years following his marriage to Ena Du-hon.
Ena Duhon, according to her testimony, first met the defendant, Sidney LeBlanc, at Trahan’s Club in Lafayette 11 years after her husband died. Thereafter, according to Ms. Duhon, she and the defendant met there on a weekly basis for five or six months. During this period of time, Ms. Duhon allegedly danced exclusively with the defendant. Towards the end of this period of time a fair was held near Tra-han’s Club. Defendant and Ms. Duhon allegedly went to the fair where they had their picture taken together. This picture was admitted in evidence. Ms. Duhon testified that on that occasion she and the defendant engaged in sexual intercourse in the back seat of a big black car that was parked near Trahan’s. Ms. Duhon asserts that this was the only time she had sexual intercourse with defendant, and that the plaintiff was conceived at this time. This singular affaire d’amour allegedly took place in February, 1941. Plaintiff was born approximately nine months later.
According to Ms. Duhon, she informed defendant of her pregnancy and was told by the defendant not to give the baby away. She further testified that defendant came to see the baby on one occasion and acknowledged that he was the father. This alleged meeting is not corroborated by any evidence and was denied by the defendant. Ms. Duhon never took the baby to see defendant. Defendant never supported the *225 child nor did Ms. Duhon ever request him to do so.
Plaintiff has used the name of LeBlanc since her birth. Her baptismal certificate, report cards, graduation diplomas from high school and college, and marriage certificate, all refer to her as a LeBlanc. Her birth registration shows her father to be Ernest Sidney LeBlanc, however, his signature does not appear on the registration form.
In 1960, Ms. Duhon executed a notarial act legitimating her daughter. Defendant had, at that time, allegedly agreed to legitimation but then refused to sign the act.
Plaintiff testified at trial that she first learned defendant was her father when she was in the 5th grade. She stated that she had been encouraged to visit the defendant while she was young but she had never done so, even though they only lived a short distance apart. Plaintiff testified that she had lived all her life, 42 years, at the same location in Milton, and had visited defendant for the first time after the instant suit was filed. She also admitted that the instant suit was not filed until after she gained knowledge that defendant had started to receive substantial income from oil royalty payments. On cross-examination, she stated that defendant had never visited her; never contributed to her support or education; never sent Christmas cards or birthday cards to her; had not attended or been invited to her first communion; had not been invited to or attended her high school or college graduations; and, had not attended nor been invited to her wedding to Daniel LaPointe. Actually, plaintiff could not relate one single instance where defendant had in any fashion acknowledged to her personally that she was his daughter.
The scientific evidence presented consisted of three independent blood grouping tests performed by various experts in this field. Those studies revealed that the defendant was not excluded from the possibility of being plaintiff’s father, but rather showed a probability of 93.3%, 98.127% or 99.6%. Dr. Cooper, one of plaintiff's experts, testified that the results of these tests merely tell one how likely it is that the man in question could be the biological father as compared to a random man. He related that the results of the tests assume that all the people in plaintiffs and defendant’s backgrounds were of the same race, that sexual contact did take place, and that both parties were fertile. He further stated that the results show that defendant is only one of a group of men who could have been the biological parent, the results do not purport to be unequivocal. On cross-examination, Dr. Cooper testified that the results were generated by comparing the blood test results of the alleged father to the results of blood tests that had been taken from a nationwide sample. Dr. Cooper knew of no blood type studies that had been conducted specifically on “Cajuns”. He indicated that intermarriage within the “Cajun” population would produce lower percentage probabilities. Testimony by another witness was to the effect that the LeBlanc family had a history of intermarriage in Vermilion Parish.
Allen Bares, defendant’s nephew, testified that 10 years before the trial, his father told him that defendant had a daughter, and that she had married a LaPointe. His mother mentioned to him before she passed away in 1983, but after the suit was filed, that she had met the plaintiff at a fair in Broussard. On cross-examination, Bares stated that these were the only two times that his parents ever mentioned plaintiff; his father had never met Mrs. LaPointe; and, defendant had never mentioned plaintiff to him, although they had engaged in numerous conversations in the past. Mr. Bares also testified that his aunt, Wanda Savoie, the defendant’s sister, had shown him a high school graduation picture of the plaintiff that she allegedly took from the trunk of one of the defendant’s cars.
Two other witnesses for the plaintiff testified that they heard defendant say, after the suit was filed, that his son-in-law was a LaPointe and that the girl who was suing him was his daughter. Apparently one of *226 the statements took place in a “teasing” situation and, in both, the plaintiffs name was never directly mentioned.
The defendant did not appear at the trial because of illness and/or physical infirmity, however, his deposition was admitted in evidence. In his deposition, defendant admitted that he met Ena Duhon at various dance halls in the Lafayette área some 40 years previous. However, he repeatedly denied ever having sexual intercourse with her. He also denied that he let Ena Duhon use his last name on plaintiff’s birth certificate and other documents; denied ever visiting the mother and baby at the mother’s house; denied knowledge of Ena’s pregnancy or of plaintiff’s birth; and, denied telling his sister, Allen Bares’ mother, that the plaintiff was his daughter.
Defendant’s sister, Wanda LeBlanc Sa-voie, age 67, testified on his behalf. She stated that the defendant disliked his other sister, Allen Bares’ mother, and also disliked her husband. She doubted that defendant had ever mentioned anything to these people about the plaintiff. She had never heard plaintiff’s name mentioned although she had visited with defendant on a weekly basis for his entire adult life. Also, she had never heard of Ena Duhon. On cross-examination she did admit to finding a high school graduation picture of plaintiff in the trunk of an old car that belonged to defendant. However, when she confronted defendant with the picture, he did not say who it was. She also denied showing the picture to Allen Bares, who earlier testified that she had shown it to him.
The illegitimate child whose alleged parent is living must prove filiation by a preponderance of the evidence. Schwab For & On Behalf of Schwab v. Galuszka, 468 So.2d 737 (La.App. 4th Cir.1985), writ denied, 464 So.2d 1386 (La.1985), U.S.App. Pending; O’Bannon v. Azar, 435 So.2d 1144 (La.App. 4th Cir.1983), writ denied, 441 So.2d 749 (La.1983); State v. Wiggins, 409 So.2d 1264 (La.App. 2nd Cir.1982); La. C.C. art. 209.
La.C.C. art. 209 states, in pertinent part, that:
“A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child ...”.
This standard requires that the evidence, when taken as a whole, must show that the fact or cause sought to be proven is more probable than not. IMC Exploration Company, et al v. Henderson, et al, 419 So.2d 490 (La.App.2d Cir.1982), writ denied, 423 So.2d 1149 (La.1982).
Evidence presented by the illegitimate child to prove filiation may include, but is not limited to, informal acknowledgment evidence, IMC Exploration, supra; State v. Jefferson, 448 So.2d 907 (La.App. 3rd Cir.1984), and scientific blood test results, State v. Wiggins, supra; Schwab, supra; O’Bannon, supra.
To establish filiation by informal public or private acknowledgments in conversation, it must be shown that the father has continuously and unequivocally recognized the child as his own. As stated in IMC Exploration, supra:
“Based on the above jurisprudence we conclude that in order for private ac-knowledgements in conversation to be sufficient to prove paternity these informal acknowledgments must be of a continuous, habitual and unequivocal nature; that is, of a sufficient frequency that there can be little doubt that the alleged father truly believes himself to be the father of the child ...”
See also State v. Jefferson, supra; Succession of Matte, 346 So.2d 1345 (La.App. 3rd Cir.1977); Williams v. Vidrine, 330 So.2d 396 (La.App. 3rd Cir.1976). Whether or not there has been an informal acknowledgment is a factual determination which is made after considering the entire body of evidence. Unless a trial court’s factual determination is shown to be clearly wrong, it should not be disturbed upon appeal. Succession of Matte, supra; Ar- *227 ceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Plaintiff presented three witnesses on informal acknowledgment. Two of those witnesses could only testify to statements made by the defendant after the instant suit was filed. Neither of these witnesses indicated that defendant had continuously and unequivocally recognized plaintiff as his daughter over the years before the suit was filed. The third witness for plaintiff, Allen Bares, alleged that his parents had in the past mentioned plaintiff’s existence, and that defendant was her father, but he could only remember one time with each parent when this was mentioned. Bares also indicated that defendant never mentioned plaintiff to him, although defendant had known him all his life and had frequently conversed with him. On this issue, the trial judge also had the testimony of defendant’s sister, Wanda Sa-voie, which supported the view that defendant had not over the past 40 years ever acknowledged that plaintiff was his daughter. Viewing this evidence in light of the aforestated principles, we conclude that plaintiff failed to adequately show frequent, continuous, unequivocal acknowledgment by the defendant that plaintiff was his child. Thus, the trial court’s conclusion that informal acknowledgment was not proved will not be disturbed.
Blood tests constitute another form of evidence which is to be considered in proof of filiation cases. Blood tests merely indicate that a certain person could have been the father, they are not conclusive. They are just one of the many factors that the trial court must taken into consideration. State v. Wiggins, supra; LSA-R.S. 9:396 et seq.
The blood test results in the instant case provide the strongest support for the contention that defendant is plaintiff’s father. However, the results of the tests must not be viewed in a vacuum. The test results do not constitute unequivocal proof of parentage and should be considered with all the other relevant evidence, including the evidence pointing towards informal acknowledgment or a lack thereof. Schwab, supra; O’Bannon, supra; State v. Wiggins, supra; IMC Exploration, supra; Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.1984), writ denied, 448 So.2d 112 (La.1984).
In sum, we conclude that the trial court did not err in determining that plaintiff failed to prove by a preponderance of the evidence that defendant is her biological father. There is no proof in the record that defendant continuously and unequivocally recognized plaintiff as his child in public or private conversations. Defendant is not shown to have acknowledged plaintiff to be his daughter in any private writing. Defendant never supported plaintiff financially, and, in fact, had no contact whatever with her until the instant suit was filed and none with her mother for over 40 years. The fact that defendant and Ena Duhon were occasionally together at dances around the time plaintiff was most likely conceived, the fact that plaintiff was given the family name of LeBlanc by her mother, and the fact that the blood test results reflect that defendant could be plaintiff’s biological father, standing alone, are not sufficient to establish filiation.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.
FORET, J., concurs and assigns written reasons.

. Act No. 720 of 1981 amending Civil Code Arts. 208 and 209 allowed persons against whom the time limitation for instituting an action for filiation would otherwise have accrued a period of one year from the effective date of the act to bring a filiation proceeding.