497 So.2d 1361 (1986)
Jeanne Ruby LeBLANC
v.
Sidney E. LeBLANC.
No. 86-C-0907.
Supreme Court of Louisiana.
November 24, 1986.
*1362 Vance R. Andrus, Claude Rivet, Andrus, Boudreaux, Salley & Tonore, Donald Capretz, Gachassin, Caretz & Hunter, Lafayette, for applicant.
Roger G. Sellers, Thompson & Sellers, Abbeville, Charles N. Wooten, Lafayette, for respondent.
DIXON, Chief Justice.[*]
On June 15, 1982, Jeanne Ruby LeBlanc filed suit[1] to be declared the daughter of Sidney E. LeBlanc. The trial court held against the plaintiff, finding that she failed to prove her paternity by a preponderance of the evidence. The court of appeal affirmed. We find the plaintiff did in fact meet her burden of proof and, therefore, reverse the lower courts.
The opinion of the court of appeal described the facts in part as follows:
"Ena Duhon, according to her testimony, first met the defendant, Sidney LeBlanc, at Trahan's Club in Lafayette 11 years after her husband died. Thereafter, according to Ms. Duhon, she and the defendant met there on a weekly basis for five or six months. During this period of time, Ms. Duhon allegedly danced exclusively with the defendant. Towards the end of this period of time a fair was held near Trahan's Club. Defendant and Ms. Duhon allegedly went to the fair where they had their picture taken together. This picture was admitted in evidence. Ms. Duhon testified that on that occasion she and the defendant engaged in sexual intercourse in the back seat of a big black car that was parked near Trahan's. Ms. Duhon asserts that this was the only time she had sexual intercourse with defendant, and that the plaintiff was conceived at this time. This singular affaire d'amour allegedly took place in February, 1941. Plaintiff was born approximately nine months later." LeBlanc v. LeBlanc, 486 So.2d 223, 224 (La.App. 3d Cir.1986).
In Mr. LeBlanc's deposition that was introduced at trial, he conceded to having met and danced with Ms. Duhon but denied having had sexual intercourse with her or having ever acknowledged the child as his own.
On the plaintiff's birth certificate her mother listed the father as Ernest Sidney LeBlanc. Plaintiff, herself, was given the name Jeanne Ruby LeBlanc when she was born on November 6, 1941. This is the name that appears on her birth certificate, grade school report cards, high school graduation announcements, high school diploma, college diploma and marriage license. Plaintiff carried the name of the defendant until her marriage to Daniel La-Pointe.
Ms. Duhon remembered several times when the defendant had acknowledged the plaintiff to be his own child. According to Ms. Duhon, when she told Mr. LeBlanc she was going to have his baby he responded, *1363 "Don't you dare go give that baby to nobody." Ms. Duhon testified that when the plaintiff was very young Mr. LeBlanc visited her at her godfather's house. During this visit, the defendant had laughed with Ms. Duhon and said they were too old to be having a little girl.
In 1960 Ms. Duhon executed an act of legitimation which she claims the defendant had agreed to sign. However, the defendant refused to sign the document after it was prepared.
Both the defendant's barber, Woodley Trahan, and a customer in his barber shop, Homer Broussard, testified that Mr. Le-Blanc had said his son-in-law was named Daniel LaPointe. Mr. Trahan and his wife also testified that after Ms. LaPointe filed suit, Mr. LeBlanc complained that a girl had sued him and that in fact this girl was his daughter.
The court of appeal further found:
"Allen Bares, defendant's nephew, testified that 10 years before the trial, his father told him that defendant had a daughter, and that she had married a LaPointe. His mother mentioned to him before she passed away in 1983, but after the suit was filed, that she had met the plaintiff at a fair in Broussard. On cross-examination, Bares stated that these were the only two times that his parents ever mentioned plaintiff; his father had never met Mrs. LaPointe; and, defendant had never mentioned plaintiff to him, although they had engaged in numerous conversations in the past. Mr. Bares also testified that his aunt, Wanda Savoie, the defendant's sister, had shown him a high school graduation picture of the plaintiff that she allegedly took from the trunk of one of the defendant's cars." 486 So.2d at 225.
The most persuasive evidence of paternity before this court is the results of three separate testing procedures that were performed on blood samples from Ms. Duhon, plaintiff and defendant. These results were obtained and introduced in accordance with the Uniform Act on Blood Tests to Determine Paternity, R.S. 9:396-398,[2] which was adopted in Louisiana in 1972. The statute allows the court to appoint experts to conduct blood tests in "any civil action in which paternity is a relevant fact." The court in this case appointed Dr. Leslie Ray Bryant, who was accepted as an expert in pathology and blood banking. Dr. Bryant performed tests on the blood samples and concluded that there was a 93.3% probability that Sidney LeBlanc was the father of Jeanne LeBlanc. Although Dr. Bryant found nothing that would exclude Mr. LeBlanc as the father, he recommended new blood samples be sent to Dr. Hebert Polesky at the Minneapolis War Memorial Blood Bank in Minneapolis, Minnesota for more sophisticated testing which would either exclude Mr. LeBlanc as a possible father of the plaintiff or increase the probability of paternity.
New blood samples were sent to Minneapolis. Dr. Polesky testified through deposition that, according to his tests, there was no basis to exclude Mr. LeBlanc as the father and that there was a 98.127% probability that Sidney LeBlanc was in fact the father of Jeanne LeBlanc LaPointe. He described the percentile rating as a "prior probability" meaning that if Mr. LeBlanc was compared with another random Caucasian who had an equal opportunity to father the plaintiff, the chances would be 98.127 out of 100 that Mr. LeBlanc would be the father. He went on to say that under the numerous tests performed by Dr. Bryant and himself, "a falsely accused male would have a 99 percent chance of having been excluded if he were falsely accused." Dr. Polesky concluded that to a "reasonable medical certainty," Mr. Le-Blanc is the father of plaintiff.
After the two doctors appointed by the court had reached the above conclusions, the defendant requested that a third doctor be allowed to perform separate and independent *1364 tests. Dr. Edgar Cooper was accepted as an expert in the field of blood banking and paternity testing. However, because of his findings, Dr. Cooper was called as a witness for the plaintiff and testified that his tests indicated a "99.6% plausibility" that Mr. LeBlanc was the biological father.
Under C.C. 209, the plaintiff in this case is required to prove her filiation by a preponderance of the evidence. However, the means by which the plaintiff is able to meet her burden of proof has been expanded by the legislature. Prior to 1980, C.C. 209 specified only three categories of evidence that could be used to prove paternity. In 1980 the article was amended to state in part: "A child of man may prove filiation by any means which establish, by a preponderance of the evidence ... that he is the child of that man." It was amended again in 1981 to state simply that a child who wishes to prove filiation to an alleged parent who is living must do so by a preponderance of the evidence.
Through the adoption of the Uniform Act on Blood Tests, the legislature has demonstrated a willingness to allow scientific data to assist the fact finder in reaching its determinations. Although scientific testing alone is not sufficient to prove paternity, it is persuasive and objective testimony that can help establish proof by a preponderance of the evidence. Probabilities by their nature are not conclusive. They can, however, be used to help prove filiation in a paternity suit.
Jeanne LeBlanc succeeded in proving filiation by a preponderance of the evidence. Mr. LeBlanc acknowledged the plaintiff to be his daughter on several occasions. The defendant's bare denials of paternity are weakened by the plaintiff's graduation picture that was found in the defendant's car. No explanation was offered as to how this picture got into the possession of the defendant or why he chose to keep it for many years.
The weight of the evidence in this case preponderates in favor of the plaintiff, and shows that plaintiff and defendant are related. Given the objective scientific evidence and the corroborating testimony of the witnesses, it is clear that the plaintiff has succeeded in meeting her burden.
Accordingly, the judgments of the lower courts are reversed, and there is now judgment in favor of plaintiff, Jeanne Ruby LeBlanc, and against defendant, Sidney E. LeBlanc, declaring the defendant to be the father of plaintiff, all at the cost of the defendant.
NOTES
[*] Chief Judge Pike Hall, Jr. of the Second Circuit Court of Appeal sitting in place of Lemmon, J.
[1] Both lower courts found this action timely filed, and timeliness is not an issue before us. Section 2 of Act 720 of 1981 contained the following grace period:

"Any person against whom the time period provided in this Act would otherwise have accrued except for the provisions of this Section shall have one year from the effective date to bring a proceeding to establish filiation of a child. If no such proceeding is timely instituted, such filiation may not thereafter be established." Section 2 was removed by Act No. 527 of 1982.
[2] Since this case was tried on May 21, 1984, any amendments to R.S. 9:396-398 that became effective after this time are not applicable.