JiDUFRESNE, Judge.
Defendant, Mark Shaddinger, appeals a judgment declaring him to be the father of the minor child, Jordan Lisa Baney. For the reasons set forth herein, we affirm the paternity judgment as well as the subsequent judgment ordering him to pay support to the minor child.

BACKGROUND

This case was instituted pursuant to the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA), as set *967 forth in LSA-Ch.C. arts. 1301, et seq.[1] In August of 1992, the state of New York filed a URESA petition on behalf of the plaintiff, Jill Baney, with the Jefferson Parish Juvenile Court, seeking the. establishment of paternity, child support, and medical coverage for her minor child, Jordan Lisa Baney. Additionally, since the defendant previously denied paternity, she ^requested blood testing. In the supporting paternity affidavit, Ms. Baney alleged that Mark Shaddinger was the father of the child, that the child was conceived in December of 1983, that she did not have sexual intercourse with any other man within the thirty days prior or subsequent to the date of conception, and that she was not married at the time of the child’s birth. In this affidavit, the plaintiff also claimed that she informed the defendant that he was the father of the child, that he verbally admitted to being the father, that he paid to have the child’s ears pierced, that he visited her several times, and that there were witnesses to the plaintiffs relationship with the defendant.
Subsequently, on September 28, 1992, the Jefferson Parish Juvenile Court, pursuant to a motion by the District Attorney, signed an ex parte order requiring the defendant to submit to paternity blood testing. In response, the defendant filed a Motion to Vacate Order for Blood Testing and/or for Protective Order, alleging that he was never afforded the mandatory contradictory hearing prior to the issuance of the blood testing order. Following a hearing, the court vacated the ex parte order for blood tests and set the matter for a preliminary paternity hearing at the request of the defense. After several continuances, the preliminary paternity hearing was conducted on January 31, 1994. At the conclusion of the proceedings, the court found that blood testing of the defendant was warranted based on the paternity affidavit that was submitted by the plaintiff. In addition, based on the defendant’s^allegations that his brother, Brian Shaddinger, could possibly be the child’s father, the court thereafter ordered that both the defendant and his brother simultaneously submit to paternity blood testing pursuant to LSA-R.S. 9:396. In accordance with this ruling, the judge signed a written judgment on February 17, 1994. The defendant thereafter challenged this ruling and filed a writ application with this court (Writ Number 94-C-190), asserting that he was ordered to submit to paternity testing in violation of his due process rights to a contradictory hearing. On April 6, 1994, this court denied the defendant’s writ application, finding that the defendant was in fact granted a show cause hearing. In the writ disposition, we also found that the trial judge did not abuse his discretion in evidently concluding that the affidavit was sufficient evidence to establish ,a prima facie case so as to warrant the blood testing. The defendant then sought review in the Louisiana Supreme Court, which likewise denied his -writ application (Writ number 94-CC-1182).
Thereafter, there were numerous orders issued by the court, pursuant to motions by the state, requiring the defendant to submit to blood tests. Despite these orders, the defendant still failed to undergo the paternity blood testing. On June 19,1995, the date the matter was set for trial to establish paternity, the defendant informed the court that he did not get the blood tests performed because his brother apparently failed to appear for the tests and he wanted the tests performed simultaneously pursuant to the court’s February 17, 1994 judgment. After glistening to the arguments of counsel, the judge expressed his opinion that it was not important that the defendant and his brother be tested simultaneously, nor was it even necessary his brother be tested. The judge then countermanded the February 17, 1994 order which was issued by a different judge and which required both the defendant and his brother to be tested simultaneously. The judge ordered that the defendant appear for blood testing. A written judgment to that effect was signed on June 29, 1995. Seeking review of this ruling, the defendant filed a writ application in this court (Writ Number 95-C-605). We denied the relief requested finding no reason to exercise our supervisory *968 jurisdiction. The Louisiana Supreme Court likewise denied the defendant’s writ application (Writ Number 95-CC-2276). The defendant then filed an emergency application for stay order in the Louisiana Supreme Court pending filing of the petition for writs to the United States Supreme Court. This emergency application for stay order was denied.
Several days prior to the scheduled paternity hearing, the defendant filed a Motion for Continuance and a Motion to Set Contradictory Hearing on Issue of Paternity Blood Testing. Both motions were denied, and the matter finally came before the court on June 10, 1996, for a paternity hearing. While the trial judge was apparently willing to give the defendant another' opportunity to undergo blood testing, the defendant refused the offer, advising the judge that he would not submit to blood work without a prior contradictory hearing. The court thereafter ^conducted the paternity hearing and following the presentation of the evidence, the judge took the matter under advisement, giving the parties an opportunity to submit post-trial memorandum. On September 30, 1996, the trial judge issued a written judgment assigning very thorough reasons, finding that the state had met its burden of proof by a preponderance of the evidence. The court accordingly declared Mark Shaddinger to be the father of the minor child known as Jordan Lisa Baney born to Jill T. Baney on August 31,1984.
Thereafter, on November 18, 1996, the court conducted a hearing to determine the amount of support as well as medical coverage for the child. Prior to considering the support issue, the trial judge entertained and then denied a Motion for New Trial and a Motion for Continuance which had been filed by the defendant. The judge thereafter considered the testimony surrounding the support issue, and at the conclusion of the proceedings, she accepted the recommendation of Anne Ruiz, the IV-D worker, and set support in the amount of $124.00 per month, retroactive to the date of the filing of the petition, resulting in arrears in the amount of $6,324.00. The judge ordered that the defendant pay $26.00 per month toward the arrears, that he pay 6% court costs, and that he report regularly to the IV-D office as to his employment situation. The court further ordered • that upon employment, he pay the support via an income assignment order and that he supply medical insurance as soon as it becomes available from an employer. From the | (judgment establishing paternity and the judgment setting child support, the defendant now appeals.

DEFENDANT’S RIGHT TO CONTRADICTORY HEARING

. In his first two assigned errors, the defendant complains because the juvenile court ordered him to submit to paternity blood testing pursuant to LSA-R.S. 9:396 without a contradictory hearing and without requiring the plaintiff to show a reasonable probability of paternity. As a result, defendant asserts that his due process rights were violated. Louisiana law regarding the use of blood tests to determine paternity can be found in LSA-R.S. 9:396 which reads, in part, as follows:
A. Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action endesaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood or tissue is involved, mayor, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the collection of blood or tissue samples, or both, and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and- the interests of justice so require. ,
B. (1) The district attorney, in assisting the Department of Social Services in establishing paternity as authorized by R.S. 46:236.1, may file a motion with a court of proper jurisdiction and venue prior to and *969 without the necessity of filing any other legal proceeding. Upon ex part emotion of the district attorney and sworn affidavit of the party alleging specific facts tending to prove 17paternity and other facts necessary to establish the jurisdiction and venue of the court, the court shall issue an ex parte order directing the. mother,child, and alleged father to appear at a certain date and time to submit to the collection of blood or tissue samples, or both and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. The order shall be personally served upon the alleged father. If any party refuses to submit to such tests, the court, in a subsequent civil action in which paternity is a relevant fact, may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
The Louisiana Supreme Court, addressed, the constitutionality of LSA-R.S. 9:396 In Interest of J.M., 590 So.2d 565 (La.1991), and explained that in cases in which paternity is contested and a party to the action refuses to voluntarily undergo a blood test, a show cause hearing must be held in which the. court can determine whether there is sufficient evidence to establish a prima facie case which warrants issuance of a court order for blood testing. In the show cause hearing, before the statute is triggered and a court order for blood testing issued, the moving party must first show that there is a reasonable possibility of paternity. In conclusion, the Louisiana Supreme Court stated:
Because of the strong societal interest in the determination of parentage of minor children and the minimal intrusion involved, we find that court-ordered blood testing in paternity cases is constitutionally permissible if justified under the circumstances of the particular case. La.R.S. 9:896 is reasonably construed by this Court to require a proper showing in a show cause hearing before issuance of an order for compulsory blood testing. The statute is therefore not unconstitutional, because, so construed, it 18does not violate the prohibition against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution or Article I, Section 5 of the 1974 Louisiana Constitution, nor does it violate an individual’s due process and equal protection rights under the Fourteenth Amendment of the United States Constitution or Article I,Sections 2 and 3 of the 1974 Louisiana. Constitution.
In Interest ofJ.M., supra at p. 572
The defendant is correct in his assertion that a contradictory hearing is required before the court can order compulsory blood testing. However, as we previously noted in the denial of his writ application, we find that the defendant was afforded a show cause hearing on January 31, 1994. We additionally find that sufficient evidence was presented in the affidavit to show a reasonable possibility of paternity, so as to warrant the issuance of an order for blood testing. While there was no witness testimony at the hearing, there is nothing to indicate that the trial judge would have refused to allow such testimony had either party attempted to present it. Based on the foregoing discussion, we find that the defendant’s first two specifications of error lack merit.

MODIFICATION OF PRIOR COURT JUDGMENT

In his next assigned error, the defendant complains that the juvenile court erred in altering the substance of a previously rendered judgment absent a timely filed motion for new trial, petition for nullity or appeal. The defendant specifically claims that the judgment rendered on June 29,1995, which ordered him [¡¡to submit to DNA/patemity blood testing should be declared null and void, and that the judgment of February 17, 1995 which ordered that both the defendant and his brother be tested simultaneously, be reinstated.
LSA-C.C.P. art.1951, granting a. court authority to amend a judgment, provides:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
*970 (2) To correct errors of calculation.
In the absence of a timely filed motion for new trial, a trial court cannot alter the substance of its judgment; and no court can later alter the substance of a judgment if no one has perfected an appeal. LSA-C.C.P. art.1951 permits a judgment to be amended by the court if the amendment takes nothing from or adds nothing to the original judgment. However, LSA-C.C.P. art.1951 is clear that its application is only intended for final judgments. McCrea v. Mobil Oil Corp., 95-0537 (La.App. 4 Cir. 9/28/95), 662 So.2d 143.
A final judgment is defined in LSA-C.C.P. art. 1841 as one that determines the merits in whole or in part. An interlocutory judgment is defined as one that does not determine the merits but only preliminary matters.
The ruling in the instant case is purely interlocutory in nature as it does not determine the merits of the case. As such, | ipit is not governed by the requirements of LSA-C.C.P. art. 1951. Winstead v. Ed’s Live Catfish & Seafood, Inc., 554 So.2d 1237 (La. App. 1 Cir.1989), unit denied, 558 So.2d 570 (La.1990). Thus the juvenile court judge was well within his authority in amending the February 17, 1995 judgment which had been rendered by a different judge. Moreover, the June 29,1995 judgment did not alter the fact that the defendant was still required to submit to paternity testing.
With regard to the June 29, 1995 judgment, the defendant, in his fourth assigned error, asserts that the court erred in rendering a judgment on an issue which had been previously fully adjudicated, thereby making the judgment invalid pursuant to the doctrine of res judicata.
The principle of res judicata is applicable only where a final judgment has been rendered. Associates Financial Services of America, Inc. v. Rogell, 449 So.2d 526 (La.App. 5 Cir.1984), writ denied, 456 So.2d 167 (La.1984); Henry Ins. Agency, Inc. v. Desadier, 94-39 (La.App. 3 Cir. 10/5/94), 643 So.2d 374. See also LSA-R.S. 13:4231. As stated previously, the judgment at issue is purely interlocutory in nature, and therefore, the doctrine of res judicata is not applicable. Based on the foregoing discussion, these allegations of error presented by the defendant are likewise without merit.

DETERMINATION OF PATERNITY

We now address the defendant’s final issue dealing with the court’s actual determination of paternity. The defendant | nspecifically argues that the juvenile court erred in allowing paternity to be proven on the sole basis of a hearsay affidavit, thereby violating his rights of due process and confrontation of witnesses.
The fact of paternity obliges a father to support his child. Moga v. Dubroc, 388 So.2d 377 (La.1980); LSA-C.C. art. 240. However, the fact of paternity must be proved by a preponderance of the evidence. LSA-C.C. art. 209(A); State v. Tantillo, 620 So.2d 346 (La.App. 5 Cir.1993). Simply stated, it must be shown that paternity is more probable than not. State Dept. of Social Services v. Thomas, 27,248 (La.App. 2 Cir. 8/23/95), 660 So.2d 163. Although alone insufficient to prove paternity, scientific testing provides persuasive and objective evidence that can help establish paternity by a preponderance of the evidence. LeBlanc v. LeBlanc, 497 So.2d 1361 (La.1986); McKenzie v. Thomas, 95 2226 (La.App. 1 Cir. 6/28/96), 678 So.2d 42, writ denied, 96-1855 (La.10/25/96), 681 So.2d 372. Proof of paternity is a factual question, and a trial court’s determination of the issue should not be disturbed, absent manifest error. State v. Frisard, 96-368 (La.App. 5 Cir. 4/29/97), 694 So.2d 1032.
At the paternity hearing, the state elicited testimony from Anne Ruiz, the IV-D worker, and submitted into evidence, over the objection of the defendant, the URESA packet, which included the paternity affidavit. In the affidavit, Ms. Baney stated under oath that Jordan Baney was conceived as a result [ xgof sexual intercourse with the defendant in December of 1983, that she did not have sexual intercourse with any other man within the thirty days prior or subsequent to the date of conception, that she informed the defendant that he was the father of the child, that he verbally admitted to being the father of the child, that he offered to pay for an *971 abortion/medical expenses, that the defendant stated that he would stand by the plaintiff and cooperate with the decision she made, that the defendant paid to have the child’s ears pierced, that the defendant told friends that he gave her money for an abortion but did not, that the defendant visited the child four or five times, that there were witnesses to her relationship with the defendant, and that the child physically resembled the defendant. In corroboration of the latter, a photograph of the child was attached to the affidavit. After the testimony of Ms. Ruiz and the introduction of the URESA packet, the state rested its case. Defense moved for a directed verdict, which was denied.
The defendant then testified in his own behalf. He denied the allegations set forth in the paternity affidavit, specifically denying that he was the father of the child or that he had any type of sexual relationship with the plaintiff. He testified that the plaintiff is his brother’s girlfriend, that they have lived together for quite a while, and that he and his brother do not have a good relationship. Pursuant to cross-examination by the prosecutor, the defendant testified that he has never taken a | igblood test in connection with this case.
After considering the testimony, the judge took the matter under advisement and thereafter issued a written judgment with very thorough reasons, finding that the state had met its burden of proof beyond a preponderance of the evidence. The court thereafter declared Mark Shaddinger to be the father of the child.
After reviewing the record before us, we agree with the trial judge’s conclusion that the sworn statements of the mother, together with the defendant’s failure to submit to blood testing, is sufficient to meet the state’s burden of proving paternity beyond a preponderance of the evidence. We acknowledge that the affidavit submitted by the state to prove the relationship of the parties is inadmissible hearsay under the Louisiana Rules of Evidence since they do not fall within one of the hearsay exceptions, nor are they admissible by statute. However, we agree with the trial judge that the defendant waived his objection to the admission of this evidence since he did not avail himself of the opportunity to cross-examine the mother by deposition, a procedure provided for under the provisions of URESA[2] See State v. Parham, 93-989 (La.App. 5 Cir. 3/29/94), 636 So.2d 991. Moreover, the defendant failed also to avail himself of 114blood testing, which the URESA law provides for his defense. LSA-R.S. 9:396 specifically provides that if any party refuses to submit to such tests, the court may resolve the question of paternity against such party.
After reviewing the record and based on the reasons set forth herein, we find that the state proved the paternity of the defendant by a preponderance of the evidence. Thus, the juvenile court did not commit manifest error in declaring Mark Shaddinger to be the father of the child.
Accordingly, the judgment of the juvenile court is affirmed.

AFFIRMED.

. Effective January 1, 1996, URESA was repealed and replaced with the Uniform Interstate Family Support Act (UIFSA).

. LSA-Ch.C. art. 1322 provided that if the obli-gee is not present at the hearing and the obligor denies owing the duly of support or offers evidence constituting a defense, the court, upon request of either party, shall continue the hearing to permit evidence relative to the duty by either parly by deposition or by appearing in person before the court. The substance of this article is now found in LSA-Ch.C. art. 1303.16 F, effective January 1, 1996, which provides that a court of this state may permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means at a designated court or other location in that state.