875 So.2d 962 (2004)
STATE of Louisiana
v.
Robert E. TAYLOR.
No. 04-KA-90.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*964 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Kia M. Habisreitinger, Kenneth Bordelon, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
*965 THOMAS F. DALEY, Judge.
The defendant, Robert Taylor, has appealed his convictions of possession of cocaine and possession of hydrocodone. After pleading guilty to being a third felony offender, he received two concurrent five year sentences. For the reasons that follow, we affirm the convictions and remand this matter to the trial court with instructions.

FACTS:
Robert Taylor was charged with possession of marijuana, possession with intent to distribute cocaine, and possession of hydrocodone. He pled not guilty to all counts. He proceeded to trial before a jury on the cocaine and hydrocodone charges and was tried by the judge on the marijuana charge. Robert Taylor was found guilty of possession of cocaine and possession of hydrocodone. He was also convicted of possession of marijuana, but that conviction has not been appealed.
At trial, Agent Richard Valley testified that on the morning of February 20, 2002, while working for the Jefferson Parish Sheriff's Office, he and Deputy Lance Williams participated in a narcotics "roundup." Agent Valley explained that a roundup consists of several officers carrying out a large number of arrests within a specified time period, targeting individuals for whom arrest warrants have been issued.
At 5:40 a.m., Agent Valley and Deputy Williams went to the residence at 3820 Clover Lane in Harvey to arrest one Robert Taylor on an outstanding warrant. The officers knocked on the door, and defendant's mother, Kathy Taylor, responded. The officers identified themselves and asked whether Robert Taylor was there, and Ms. Taylor said that he was not. The officers asked whether they could enter and search the house. Ms. Taylor responded, "No problem. He ain't here."
Agent Valley and Deputy Williams looked around the second floor of the residence. They found defendant and his young son sleeping on a mattress on the floor of one of the bedrooms. The officers turned on a light in the room and asked defendant his name. Defendant, who was dressed only in underwear, told them he was Robert Taylor. The officers, assuming defendant was the Robert Taylor named in the arrest warrant, told him to get dressed. When they asked him where his pants were, he pointed to a pair of black jeans lying on the floor among a pile of adult male clothing.
Deputy Williams testified that he picked up the pair of pants to which defendant pointed, and checked the garment for weapons. Deputy Williams felt lumps in the pants pockets. He reached into one pocket and retrieved a bag containing narcotics, including several rock-like objects which he recognized as crack cocaine.[1] In another pocket, Deputy Williams found a large roll of currency. When Deputy Williams removed the items from the pants, Robert Taylor said, "Oh, no, those aren't mine." Deputy Williams nevertheless placed Robert Taylor under arrest for possession of the narcotics, and advised him of his rights.[2] He dressed in the pants and other clothing from the bedroom *966 floor. Agent Valley asked him how he obtained the money found in the pants. He said that he had earned the money working as a barber.
The arresting officers ultimately discovered that defendant was not the Robert Taylor named in the arrest warrant; he was that man's son. The Robert Taylor named in the warrant was not at the residence on the morning of February 20, 2002.
Sergeant Bruce Harrison of the Jefferson Parish Sheriff's Office was accepted by the court as an expert in the abuse, packaging, distribution, and value of illegal narcotics. Sergeant Harrison testified that the primary factors used in distinguishing possession of narcotics with intent to distribute from simple possession are (1) the amount of narcotics seized, (2) the manner of packaging, and (3) the value of the narcotics. Sergeant Harrison testified that the amount of cocaine seized from the pants had a street value of $5,600.00 and that he had never seen an individual have this amount of cocaine for personal use.
Lyntrell Taylor, defendant's wife, testified that she, her husband, and their four-year-old son, were sleeping at her in-laws' home on the morning of February 20, 2002. The family had gathered there due to the recent death of her husband's grandmother. Lyntrell Taylor testified that when the officers arrived, she went to the door with her mother-in-law. She disputed the officer's testimony that they spoke with the defendant's mother, Kathy Taylor, rather she testified that she spoke with officers and repeatedly asked the officers to show her a search warrant. Lyntrell Taylor testified that when the officers did not produce a search warrant, she telephoned 9-1-1 three times to lodge complaints. The defense moved the court to allow admission of tapes of those calls to 9-1-1. The judge ruled the tapes inadmissible, as the defense had not offered proper authentication.
Lyntrell Taylor further testified that the pants in which the narcotics were found did not belong to her husband, the defendant. Rather, she explained that his pants were next to him on the bedroom floor, and that she handed them to him herself. She further testified that he was not wearing the black pants when the officers took him. Lyntrell Taylor speculated that the black pants seized by the officers belonged to her father-in-law, who kept some of his clothing in a closet in the room where her husband was sleeping. Lyntrell Taylor explained that when the her husband was taken to jail, he had $1,200.00 in cash, 14 keys, a belt, a watch, rings, and miscellaneous papers. She reasoned that if the black pants that contained the narcotics were for her husband, then the arresting officers would have removed all of the cash as well as the other items out of the pockets.
On State's rebuttal, Agent Valley testified that Lyntrell Taylor, defendant's wife, was not in the bedroom with defendant when the cocaine and hydrocodone were recovered. Agent Valley testified that he believed Kathy Taylor, defendant's mother, was in the doorway to the bedroom when he and Deputy Williams entered.

LAW AND DISCUSSION:
In his first Assignment of Error, the defendant argues the trial court erred in failing to grant his Motion to Suppress the narcotics found in the black pants on the bedroom floor because this evidence was illegally retrieved. Specifically, defendant argues that the officers performed an improper pat-down search under LSA-C.Cr.P. art. 215.1, and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the instant case, however, the police did not stop defendant in a public place, as was the case in Terry; they went *967 to his door and knocked. See, State v. Sanders, 374 So.2d 1186, 1188 (La.1979).
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. A search made without a warrant issued upon probable cause is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). A consent to search is such an exception when it is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797, p. 11 (La.7/22/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
Oral consent is sufficient to constitute an exception to constitutional warrant and probable cause requirements. State v. Ossey, 446 So.2d 280, 287, fn. 6 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Enclade, 03-353, p. 9 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 15. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was freely given. State v. Enclade, supra. Voluntariness of consent is a question of fact which the trial judge is to determine based on the totality of the circumstances. Id. The trial judge's ruling on a Motion to Suppress will not be disturbed on appeal unless it is clearly wrong. Id.
Based on the evidence adduced at the suppression hearing, the trial judge found that Agent Valley and Deputy Williams received valid oral consent from defendant's mother, Kathy Taylor, to enter her home. This testimony was repeated at trial[3]. The testimony elicited at the suppression hearing and trial supports the trial judge's denial of defendant's Motion to Suppress. Agent Valley testified at trial that Kathy Taylor answered when they knocked on the door of the residence. The officers determined that she was the wife of the Robert Taylor named in the arrest warrant. Agent Valley explained that he had a warrant for Robert Taylor's arrest, and asked whether the subject was at home. She responded that he was not there. When Agent Valley asked whether he could conduct a search, she invited the officers into the house. Deputy Williams's testimony corroborated that of Agent Valley. The trial judge found the officer's testimony to be more credible than that of Lyntrell Taylor, defendant's wife. The credibility of witnesses may not be reweighed on appeal. Id.
Having affirmed the trial judge's finding that the officers entered the house legally, we must now consider whether they had the authority to search the black pants. Deputy Williams testified at the motion hearing that he and Agent Valley discovered defendant sleeping on a mattress in an upstairs bedroom, wearing only underwear. Defendant's young son was also sleeping there. The officers turned on the light in the room and awakened defendant. They asked defendant for his name, and defendant replied that his name was Robert Taylor. Deputy Williams further testified:

*968 So, I walk around to one side of the bed thinking this is our guy we're looking for, Agent Valley stays on the other side. WeHe's in his underwear, I said: Sir, could you put some clothes on, you know, we need to talk to you. We thought we still had the right Mr. Taylor. And he said where's your pants, Agent Valley asked him where's his pants, and he indicated a pile of clothing at the foot of his bed.
At that time I retrieved a black pair of jeans, felt the pockets, felt objects in the pockets, reached into the right pocket and pulled a, what I know to be a decent amount of what I believe was crack cocaine, and some other items in the right front pocket in a plastic bag. I reached in the left front pocket, retrieved a huge wad of currency. At this time, Mr. Taylor kind of backpedaled and tried to say that that wasn't his pants. It was a child's room, and there were no other adult clothes right there or anywhere in the room. And I advised him of his rights per Miranda and told him he was under arrest.
Another of the recognized warrantless search exceptions is a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Davis, 02-1008, p. 9 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 960, writ denied, 03-0948 (La.11/7/03), 857 So.2d 516. In a search incident to a lawful arrest, the officer may search the suspect's person and the area within his immediate control in order to remove weapons and prevent evidence from being destroyed. Id. At the time Deputy Williams searched the pants, he possessed a good faith belief that he was executing an arrest warrant, and was thus entitled to perform a search incident to arrest. At trial, Deputy Williams testified that the pants were on the floor at the foot of the mattress where defendant lay. They were within defendant's immediate control. Additionally, defendant had identified the pants as his and Deputy Williams searched the pants as a matter of officer safety.
Defendant argues that the officers should have known he was not the suspect named in the warrant, and that their attempt to execute the warrant was not in good faith because he was 22 years younger than his father. At the motion hearing, Deputy Williams testified that the arrest warrant listed the suspect's date of birth as March 9, 1954. Defendant contends that since he was born in 1976 it was obvious to the officers that he was not the man named in the warrant.
We find that the officers were justified in their belief that defendant was the man named in the warrant. At trial, Agent Valley testified that he knew he was looking for a forty-eight-year-old man. Agent Valley testified that when he saw defendant asleep, he could not tell how old the defendant was. Deputy Williams testified at trial that he did not find any identification when he searched the pants. Defendant himself told the officers that he was Robert Taylor, and defendant was sleeping at the address given in the arrest warrant. Compare, Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), where the United States Supreme Court considered the validity of the arrest (without a warrant) of a man named Miller based on the mistaken belief that he was the defendant, Hill. The police had probable cause to arrest Hill and they in good faith believed that Miller was Hill when they found him in Hill's apartment. The Supreme Court found that, considering the officers reasonably believed they had arrested the right man, they were entitled to do what the law would have allowed them to do had the arrestee had in fact been the *969 defendant, that is, to conduct a search incident to arrest and to seize evidence of the crime the officers believed the defendant had committed. Id. at 803-804, 91 S.Ct. at 1110-1111. Accordingly, we find no error in the trial court's denial of the defendant's Motion to Suppress the evidence.
In his second Assignment of Error, defendant contends that the trial court erred in declining to admit in evidence a tape recording of 9-1-1 calls allegedly made by Lyntrell Taylor after officers arrived at the Clover Lane house. At trial, Ms. Taylor testified that she telephoned 9-1-1 three times to complain that the officers had entered the residence without a search warrant. She further testified that she purchased an audio tape of those calls from the Jefferson Parish 9-1-1 dispatch, and that the tape accurately reflected the content of those conversations. The prosecutor objected to the admission of the tape in evidence, based upon defendant's failure to provide proper authentication. The judge agreed with the State's argument and sustained the objection. The defense made a proffer of the tape and a communications printout with attached cash receipt.
To be admissible at trial, demonstrative evidence must first be authenticated. LSA-C.E. art. 901; State v. Cosey, 97-2020, p. 3 (La.11/28/00), 779 So.2d 675, 678, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). The authentication of evidence refers to the process by which the proponent of the evidence proves that it is what he claims it to be. Harges and Jones' La. Evidence (4th Ed.), p. 346. The initial decision as to authentication is made by the trial judge, using the standard set forth in LSA-C.E. art. 901 A: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." State v. Frisard, 96-368, p. 16 (La.App. 5 Cir. 4/29/97), 694 So.2d 1032, 1039.
Defendant offers little authority in support of his argument aside from a cursory reference to Article 901. A search of Louisiana jurisprudence has uncovered no criminal opinions interpreting Article 901 with regard to authentication of a 9-1-1 tape by a witness who claims to be one of the parties heard on the recording. The Third Circuit, however, addressed a similar issue in a civil matter, Sutton v. Fleming, 602 So.2d 228 (La.App. 3 Cir.1992). In that case, the defendant-appellant argued that the district court erred in admitting in evidence the tape recording of a conversation he had had with a third party. The appellant asserted that a proper foundation was not laid so as to properly identify the tape. The reviewing court found that the tape was sufficiently authenticated for purposes of LSA-C.E. art. 901, as the appellant identified his own voice on the tape, and further identified the date and place of the recorded conversation. In support of its holding, the Third Circuit pointed to subpart B(5) of Article 901, which provides:
B. Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:
....
(5) Voice Identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
LSA-C.E. art. 901 tracks Rule 901 of the Federal Rules of Evidence. Courts in various states, interpreting evidence rules *970 identical to Louisiana's Article 901, have found that voice identification provides a sufficient foundation for admission of a 9-1-1 tape. In State v. Gaither, 161 N.C.App. 96, 587 S.E.2d 505 (2003), review denied, 358 N.C. 157, 593 S.E.2d 83 (2004), the court found that a tape recording used as evidence in an armed robbery trial was properly authenticated as a recording of a 9-1-1 call made during the incident. The court held that it was sufficient that the store security guards who made the call identified their own and each other's voices on the tape.
In Johnson v. State, 823 So.2d 1 (Ala. Crim.App.2001), writ denied, 823 So.2d 57 (Ala.2001), cert. denied, 535 U.S. 1085, 122 S.Ct. 1978, 152 L.Ed.2d 1035 (2002), a murder case, the court held that the State provided sufficient evidence of the authenticity of a 9-1-1 tape recording. A witness testified that he had listened to the tape of the 9-1-1 calls he placed on the night of the murder, and that the tape was an accurate representation of what had transpired during those calls. Although the witness did not identify all of the voices and noises that could be heard in the background of the recording, the court found that identification of every sound on a tape is not necessary for its admission. Johnson, 823 So.2d at 24.
In State v. Jackson, 113 Wash.App. 762, 54 P.3d 739 (Div. 2, 2002), the court held that in a prosecution for first degree assault, the State properly authenticated a tape recording of the 9-1-1 call for help. A witness in that case testified that she made the telephone call for help, that she reviewed the tape recording of her call, and that the tape accurately portrayed what was said.
In State v. Muscari, 174 Vt. 101, 807 A.2d 407 (2002), the court rejected the defendant's claim that a recording of the 9-1-1 telephone call placed by a domestic assault victim during the offense was not properly authenticated. At trial the State relied upon the victim's testimony identifying the voice on the tape as her own. The court cited as authority V.R.E. 901(a), which provides that a tape recording is authenticated for admissibility "by evidence sufficient to support a finding that the matter in question is what its proponent claims." The reviewing court held that the state could authenticate the recording by "`[i]dentification of a voice, ... by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.' Id. 901(b)(5)." Muscari, 807 A.2d at 412. See also, United States v. Hamilton, 334 F.3d 170, 186-187 (2d Cir.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 502, 157 L.Ed.2d 378 (2003).
In the instant case, Lyntrell Taylor testified that she had listened to the recording, and could identify one of the voices on it as her own. Ms. Taylor stated that the tape did not leave her possession after she purchased it, and that it had not been altered. She further testified that the tape accurately reflects the conversations she had with the 9-1-1 operator. Based on the foregoing jurisprudence, we find that the trial court erred in ruling that the defense failed to provide a sufficient foundation for the tape's admission in evidence.
The defendant proffered the tape into evidence, and this Court's review of the tape indicated the following: At 5:47 a.m., Lyntrell Taylor telephoned 9-1-1 stating that the police were at the house going through the house and did not have a warrant. A female voice in the background stated that they had a warrant and would give it to Lyntrell Taylor when she was finished. Lyntrell Taylor requested that an officer be sent to the house. The next call was placed a 5:55 a.m. Lyntrell Taylor stated "they took my husband ... I *971 don't know where they are taking him." Again she asked for an officer to be sent out. The third entry on the tape appears to be an officer calling from the residence, checking on the item number for the arrest. The fourth and final entry on the tape merely states an item number.
Based on our review of the proffered tape, we find that the impact of the copy of the 9-1-1 tape would have been minimal. Defendant wished to show, by use of the tape, that Lyntrell Taylor complained to authorities that officers had entered the house without a search warrant. Lyntrell Taylor herself testified extensively as to her request for a search warrant from the officers and her repeated 9-1-1 calls. Her testimony was not disputed by the State's witnesses. The officers did not claim to have had a search warrant for the Clover Lane house. They testified that they had a warrant for the arrest of one Robert Taylor, and that they went to the house to execute that warrant.
In determining that an error was harmless, the reviewing court must be able to say that the jury's verdict was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). If one considers what it was that the defense sought to prove through the use of the tape, it seems unlikely that the evidence would have altered the verdict. Defendant wished to show, by use of the tape, that Lyntrell Taylor complained to authorities that officers had entered the house without a search warrant. However, Lyntrell Taylor herself testified to that at trial. Her testimony was not disputed by the State's witnesses. The officers did not claim to have had a search warrant for the Clover Lane house. They testified that they had a warrant for the arrest of one Robert Taylor, and that they went to the house to execute that warrant.
The officers did not require a search warrant to enter the house. Agent Valley and Deputy Williams testified that they had Kathy Taylor's consent to enter. Lyntrell Taylor testified that the house belonged to Kathy Taylor and her husband. The evidence showed that Kathy Taylor had the authority to allow the officers into the house.[4] Moreover, defendant does not argue on appeal that Kathy Taylor's consent to search was invalid. It was, therefore, of no consequence whether the officers had a search warrant, or whether Lyntrell Taylor called 9-1-1 to complain that they did not have a search warrant. Thus, we conclude the trial court's error in failing to admit the 9-1-1 tape was harmless error.
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975).
LSA-C.Cr.P. art. 930.8 provides that a defendant has two years from the date "the judgment of conviction and sentence has become final" within which to file an Application for Post-Conviction Relief. Subpart C of the article requires the trial judge to inform the defendant of the prescriptive period at the time of sentencing. The record does not show that the judge so instructed defendant. Accordingly this matter is remanded to the trial court, which is ordered to supply defendant, Robert Taylor, with written notice of the prescriptive *972 period under Article 930.8, and to file written proof of said notice in the record. See, State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
Further, the trial court improperly denied defendant, Robert Taylor, parole eligibility when it imposed the habitual offender sentence on count two. LSA-R.S. 15:529.1(G) requires only that a habitual offender sentence be served without benefit of probation and suspension of sentence. Accordingly, we vacate defendant's habitual offender sentence and remand for re-sentencing in accordance with the Habitual Offender Law.
The record further reflects that the commitment is incorrect and/or misleading in several respects. First, it states that "[t]he following charges have been resolved on February 24, 2003." While the date of the sentencing was February 24, 2003, the date on which defendant was found guilty was January 29, 2003. The transcript properly indicates that defendant was found guilty of the lesser offense of possession of cocaine as to count one. However, the commitment contains a reference to the original charge of possession with intent to distribute cocaine. The commitment shows that defendant "pleaded guilty" to count two, possession of hydrocodone, when he was in fact found guilty of that offense by a jury. The entry regarding the habitual offender sentence does not clearly indicate which of defendant's two sentences was enhanced, or that the original sentence was vacated.[5] Moreover, the commitment fails to show that the trial court ordered the enhanced sentence on count two run concurrently with the sentence on count one. On remand the trial court is ordered to amend the commitment so that it properly reflects the proceedings below and is in agreement with the transcript.

CONCLUSION:
For the foregoing reasons, the defendant's, Robert Taylor's, conviction is affirmed and his habitual offender sentence is vacated. This matter is remanded to the trial court for resentencing in accordance with the Habitual Offender Law, for instructing the defendant, Robert Taylor, of the time period for seeking post conviction relief, and for correction of the commitment.
CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS
NOTES
[1] The parties entered into a stipulation that the report of crime lab technician Daniel Waguespack showed that the off-white substance seized tested positive for cocaine, and that five white tablets marked "Vicodin ES" tested positive for hydrocodone. The parties further stipulated that if Waguespack were to testify at trial, his testimony would be consistent with his report in the instant matter.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In reviewing the ruling on the Motion to Suppress, the appellate court will look to the totality of the evidence presented at both the hearing on the Motion to Suppress and at trial. State v. Joseph, 02-717, p. 4 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1052.
[4] A warrantless search may be valid even if consent was given by one without authority, if the facts available to the officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 185-189, 110 S.Ct. 2793, 2799-2801, 111 L.Ed.2d 148 (1990).
[5] Where the transcript and a minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (1983).