# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**23-629**

**STATE OF LOUISIANA**

**VERSUS**

**DERRICK T. HILLS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 21-K-2310-B
HONORABLE ADAM GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Derrick T. Hills**

**Chad Patrick Pitre**
**Twenty-Seventh Judicial District Attorney**
**Alisa Ardoin Gothreaux**
**Assistant District Attorney**
**P.O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 654-0935**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**STILES, Judge.**

On June 23, 2023, a unanimous jury found Defendant, Derrick T. Hills, guilty of the second-degree murder of his wife, in violation of La.R.S. 14:30.1. On July 13, 2023, the trial court sentenced Defendant to life in prison without benefit of probation, parole, or suspension of sentence. Defendant now appeals, asserting in his sole assignment of error that the trial court abused its discretion in allowing the State to introduce at trial two letters allegedly written by him, which he claims were extremely prejudicial and served only to depict him as having bad character or a propensity for bad behavior or criminal conduct. For the following reasons, we find that Defendant's assignment of error is without merit and affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

Defendant and his wife, Rachelle Arceneaux, were married for ten years and lived together in a trailer in Opelousas. On the day of the incident, June 23, 2021, Defendant had been home all day. Ms. Arceneaux's daughter, Ladavian Willis, and her seven-year-old son, Ashton, had also been staying in the trailer with Ms. Arceneaux and Defendant and were there the day of the incident. Ms. Arceneaux returned home from work that afternoon and spoke with Ms. Willis in the kitchen. Ms. Willis then returned to her bedroom to watch a movie on her laptop.

While Ms. Willis was lying on her bed, Ms. Arceneaux came into the bedroom and told Ms. Willis to have her phone ready to call 911 because Defendant had thrown water in her face. Ms. Willis then saw Defendant in the doorway holding a gun. She turned her head away from Defendant, at which time Defendant shot Ms. Arceneaux multiple times. Ms. Arceneaux fell into the closet doorway in Ms. Willis' bedroom and died.

Video taken from the doorbell camera at the front door of the trailer showed Defendant leaving the trailer at 7:41 p.m. holding a rifle and driving off in Ms. Arceneaux's white pickup truck. Ms. Willis called 911 at 7:43 p.m. to report the shooting. Cell phone records show that Defendant called his brother, Corey "Slug" Ward, at 7:44 p.m., indicating that "something happened" and he wanted to turn himself in. Mr. Ward met Defendant in the parking lot of St. Francis Cabrini Hospital in Alexandria. They then drove in Mr. Ward's vehicle to the Rapides Parish Sheriff's Office, where Defendant turned himself in. The white pickup truck was located in the hospital parking lot, but the rifle used in the shooting has not been found.

On September 20, 2021, a grand jury indictment charged Defendant with the second-degree murder of Rachelle Arceneaux, in violation of La.R.S. 14:30.1. While in jail awaiting trial, Defendant allegedly wrote two letters to his brother, Mr. Ward—one on May 31, 2023 and the other on June 8, 2023. Those letters were intercepted by the mail clerk at the jail, who reviews all mail and correspondence coming into and going out of the jail.

On June 14, 2023, the State filed a State's Motion for Pretrial Admissibility of Evidence and Alternatively, the State's Pretrial Notice to Introduce Other Acts/Crimes Evidence Pursuant to La.Code Evid. Art. 404(B), stating its intention to introduce the two letters at Defendant's trial. A hearing on the State's motion was held on June 20, 2023. After hearing testimony and considering the letters at issue, the trial court granted the State's motion, allowing the letters to be admitted at trial.

Defendant's jury trial began on June 21, 2023. On June 23, 2023, the jury unanimously found Defendant guilty of second-degree murder. On July 13, 2023, defense counsel filed a motion for new trial, which was denied by the trial court that

same day. Defendant was then sentenced on July 13, 2023 to life in prison without benefit of probation, parole, or suspension of sentence.

Defendant has appealed, asserting one assignment of error:

> The trial court abused its discretion in allowing the State to introduce two letters allegedly written by Derrick Hills in evidence in this case. This 404(B) evidence was extremely prejudicial, serving only to depict Mr. Hills as having bad character or a propensity for bad behavior or criminal conduct.

Defendant specifically presents two issues for review by this court: (1) did the trial court err in finding Defendant authored the letters, State's exhibits 6-A and 6-B; and (2) did the trial court err in finding State's exhibits 6-A and 6-B to be admissible at trial?

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find there is one error in the sentence imposed and one error in the trial court's failure to observe the twenty-four-hour delay required by La.Code Crim.P. art. 873.

First, we find that the trial court failed to impose Defendant's sentence at hard labor, simply stating, "I hereby sentence Derrick Hills to serve the rest of his life in prison without benefit of probation, parole, or suspension of sentence." A sentence for second-degree murder must be imposed at hard labor. La.R.S. 14:30.1. Thus, Defendant's sentence is illegally lenient. *State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. Although the authority to correct an illegally lenient sentence is granted to this court and discretionary under La.Code Crim.P. art. 882, we find that no action should be taken as the issue of the illegally lenient sentence has not been raised as an error by either party. *See also State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109.

Second, we note that the trial court sentenced Defendant immediately after denying Defendant's motion for new trial. The trial court received the motion for new trial on the day of sentencing, July 13, 2023. The motion was denied after the trial court found that no grounds for a new trial were alleged. The trial court then stated, "All right. We'll now turn to sentencing in this matter." After making sure Defendant signed the written advisement of his post-conviction relief rights, the trial court sentenced Defendant to life in prison without benefit of probation, parole, or suspension of sentence. Defense counsel then filed a motion for appeal and the hearing was concluded.

Louisiana Code of Criminal Procedure Article 873 provides:

> If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

In *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, *cert. denied*, 583 U.S. 1160, 138 S.Ct. 1175 (2018), the supreme court found that the waiver in La.Code Crim.P. art. 873 must be express, not implicit. Distinguishing between the two types of waivers, the court explained that merely participating in the sentencing hearing would be considered an implicit waiver. *Id.* Although announcing a readiness for sentencing had been considered an implicit waiver by some appellate courts, the supreme court explained that such a waiver should really be considered an express waiver. *Id.* Subsequently, in *State v. Boyd*, 17-1749 (La. 8/31/18), 251 So.3d 407, the supreme court found an express waiver was made when the defense responded that it had no objection to proceeding with sentencing.

4

When addressing this issue, this court has found that defense counsel's response of "Yes, Your Honor," when asking if the defendant was ready to be sentenced, was an express waiver of the La.Code Crim.P. art. 873 delay. *State v. Samuel*, 19-408 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77. On the other hand, this court has found that simply failing to object and participating in the sentencing hearing does not constitute an express waiver of the delay. *State v. Charles*, 18-222 (La.App. 3 Cir. 5/1/19), 270 So.3d 859.

In this case, defense counsel remained silent after the trial court denied the motion for new trial and did not indicate in any way that Defendant was waiving the twenty-four-hour sentencing delay contained in La.Code Crim.P. art. 873. We therefore find that defense counsel's actions in this case did not constitute an express waiver of the delay.

Nevertheless, the supreme court made it clear in *Kisack*, 236 So.3d 1201, that an Article 873 violation may still be considered harmless. This court recently stated the following about the harmless error analysis in *Kisack*:

> Prior to the supreme court's ruling in *Kisack*, "errors in failing to observe La.Code Crim.P. art. 873's mandatory sentencing delay were found harmless where a mandatory life sentence was imposed or when the defendant did not challenge his sentence on appeal and did not claim prejudice due to the lack of the delay." *State v. Holden*, 19-867, p. 8 (La.App. 3 Cir. 7/15/20), 304 So.3d 520, 525, *writ denied*, 20-1016 (La. 2/9/21), 310 So.3d 174. Since *Kisack*, courts have continued to find harmless error where a mandatory life sentence is imposed or when the defendant does not challenge his sentence on appeal and does not claim prejudice due to the lack of the delay. *See State v. Deville*, 22-317 (La.App. 3 Cir. 10/19/22), 349 So.3d 1158; *State v. Williams*, 20-605 (La.App. 3 Cir. 11/3/21), 329 So.3d 938, *writ denied*, 21-1798 (La. 4/12/22), 336 So.3d 85; and *State v. Chester*, 19-363 (La.App. 5 Cir. 2/3/21), 314 So.3d 914, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321. In the present case, Defendant neither challenges the sentences imposed

nor claims he was prejudiced by the lack of a delay. Thus, we conclude
the error to be harmless under these circumstances.

*State v Toby*, 22-386, pp. 24-25 (La.App. 3 Cir. 3/8/23), 358 So.3d 289, 304, *writ denied*, 23-491 (La. 12/5/23), 373 So.3d 714.

In this case, a mandatory life sentence was imposed, and Defendant has not challenged his sentence on appeal. We therefore find that the trial court's failure to abide by the La.Code Crim.P. 873 sentencing delay was harmless.

## ASSIGNMENT OF ERROR

Defendant asserts in his sole assignment of error that the trial court erred in admitting the two letters allegedly written by him on May 31, 2023 and June 8, 2023, while he was in jail awaiting his trial, because (1) the State did not produce sufficient proof that Defendant authored the letters, and (2) the prejudicial effect of the letters outweighed their probative value.

Jacalyn Gettings testified at both the pretrial hearing on the State's motion on admissibility of the letters and the jury trial. Ms. Gettings is employed by the St. Landry Parish Sheriff's Office as the mail clerk at the jail. Her duties include reviewing all inmate mail (except for legal mail, such as letters to/from attorneys and the court) for contraband, threats towards a victim, "or anything like what [she] found on the 31st."

Ms. Gettings testified that on May 31, 2023, she received an outgoing letter addressed to a Mr. Corey Ward at 6810 Aspen Drive, Baton Rouge, Louisiana.[1] The return address was to a Tyrone Johnson, A-Block, 108 South Market Street, Opelousas, Louisiana. However, as Ms. Gettings testified, there was no inmate in

---

[1] The May 31, 2023 letter identified by Ms. Gettings at trial was introduced into evidence as the State's exhibit 6-A.

6

the jail at that time by this name. Ms. Gettings then reviewed the contents of the envelope and saw there was an affidavit from a search warrant included with the letter. The affidavit included an incident number which she discovered was linked to Defendant. Ms. Gettings then checked Defendant's booking sheet at the jail and discovered that Corey Ward—to whom the letter was addressed—was listed as Defendant's emergency contact, with the same Baton Rouge address. The letter itself started with "Wassum Slug."

On June 8, 2023, Ms. Gettings received another outgoing letter, this time addressed to Phaedra Ward at 6810 Aspen Drive, Baton Rouge, Louisiana, the same address as the first letter.[2] The return address this time, however, was to Defendant: Mr. Derrick Hill, A-Block, 108 South Market Street, Opelousas, Louisiana, DOC number 315229. Despite the different recipients written on the envelope, this second letter also started with "Wassum Slug."

***Evidence that Defendant Wrote the Letters***

Defendant argues that the State failed to prove that the two letters were written by him.

> To be admissible at trial, demonstrative evidence must first be authenticated. [La.Code Evid.] art. 901; *State v. Cosey*, 97-2020, p. 3 (La. 11/28/00), 779 So.2d 678, *cert. denied*, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). The authentication of evidence refers to the process by which the proponent of the evidence proves that it is what he claims it to be. *Harges and Jones' La. Evidence* (4th Ed.), p. 346. The initial decision as to authentication is made by the trial judge, using the standard set forth in [La.Code Evid.] art. 901 A: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Frisard*, 96-368, p. 16 (La.App. 5 Cir. 4/29/97), 694 So.2d 1032, 1039.

---

[2] The June 8, 2023 letter identified by Ms. Gettings at trial was introduced into evidence as State's exhibit 6-B.

7

*State v. Taylor*, 04-90, pp. 9-10 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 969, *writ denied*, 04-1649 (La. 11/19/04), 888 So.2d 193.

Defendant asserts that there was no evidence that Corey or Phaedra Ward, the persons to whom the letters were addressed, ever received the letters, nor was there sufficient proof that Defendant authored them. Defendant argues that he was never seen in possession of either of the letters. Furthermore, the letters were never subjected to a fingerprint or DNA analysis. The victim's daughter, Ms. Willis, testified at trial that she recognized the handwriting in the letters to be Defendant's. However, Defendant argues that Ms. Willis was not a handwriting expert, and, in fact, no handwriting expert testified that the letters were written by Defendant. Defendant concludes that the trial court therefore erred in finding that he authored the letters.

In response, the State refers to the reasons given by the trial court at the hearing on the State's pretrial motion for finding that the letters were authentic:

> Interestingly enough, the second letter, which clearly has a return address of Derrick Hills, A Block, 108 South Market, begins, "I'm writing to you in regards to my situation. I don't know what happened with my other letter that was written to you." He acknowledges he sent another letter. Don't know what happened, but anyway, how it went down, and it goes on to say what it says. It is clearly an indication that the author of these two letters, which for the life of me, I can't imagine it being anyone other than Mr. Hills, to have this kind of information, submit the Probable Cause Affidavit associated with his original arrest and is requesting, as I read it, for Mr. Ward to change his previous testimony, or his previous statement, or statements. He's wanting Mr. Ward to advise the wife, so she won't be caught off guard. . . .

Regarding the credibility of Ms. Willis, who identified the handwriting in the letters as Defendant's, the State asserts that La.Code Evid. art. 901(B)(1) provides that authentication may be provided by a witness with personal knowledge. Ms. Willis was the daughter of the victim, Defendant's wife, Ms. Arceneaux. She also

lived next door to them. She testified that she recognized the handwriting on both the envelopes and letters as Defendant's. She also identified Corey Ward in open court and confirmed that she knew his nickname was "Slug." The State concludes that the letters were self-evident, demonstrating clearly that Defendant wrote them, especially given that Defendant's probable cause affidavit was attached to one of the letters and Ms. Willis' testimony tied Defendant to the letters.

In *State v. Coleman*, 12-1408, pp. 22-23 (La.App. 4 Cir. 1/8/14), 133 So.3d 9, 25, the fourth circuit examined the authentication of an "alibi" letter allegedly written by the defendant:

> In this case, the testimony of Jameelah and Sgt. James Tyler authenticated the "alibi" letter. Jameelah was shown the letter and identified it as being the one she received from Mr. Coleman. She identified the return address on the letter as being "Latrell Coleman 2274647, OPP B1C2 3000 Perdido Street, New Orleans, La. 70119."

> Sgt. Tyler of the Orleans Parish Sheriff Office testified concerning the requirements for outgoing inmate mail. In addition to his name in the return address, an inmate must include his unique folder number, his location in OPP by tier and cell number, and the Orleans Parish Prison address of 3000 Perdido Street. Sgt. Tyler testified that he researched the defendant's location history and folder number while he was incarcerated and verified that that [sic] the information he retrieved was the same as that contained in the return address of the letter addressed to Jameelah.

> Additionally, we note that the content of the letter further supported that it was written by Mr. Coleman. The letter contained information—names of witnesses at the scene, specifics of the fight and shooting—that only a person who had been present at the scene would have known.

> Considering the foregoing, the trial court did not err by finding that the "alibi" letter was properly authenticated.

In the instant case, the State provided two witnesses to authenticate the letters: Ms. Gettings, whose testimony established the origin of the letters; and Ms. Willis, who identified the handwriting as Defendant's. The content of the letters, including

9

the attached probable cause affidavit in the first letter, related directly to Defendant. The trial court considered all these facts when finding that Defendant was the author of the letters:

> All right. First of all, with regard to the identity of the letters, the author of the letters, while the first letter purports to be from a Tyrone Johnson in A Block, 108 South Market, it's addressed to Mr. Corey Ward, 6810 Aspen Drive, Baton Rouge. It clearly is a discussion by the author of the letter to Corey Ward, about conversations that supposedly took place between Derrick Hills and Corey Ward, and it also discusses some requests that the author of the letter is making of Mr. Ward. Interestingly enough, the second letter, which clearly has a return address of Derrick Hills, A Block, 108 South Market, begins, "I'm writing to you in regards to my situation. I don't know what happened with my other letter that was written to you." He acknowledges he sent another letter. Don't know what happened, but anyway, how it went down, and it goes on to say what it says. It is clearly an indication that the author of these two letters, which for the life of me, I can't imagine it being anyone other than Mr. Hills, to have this kind of information, submit the Probable Cause Affidavit associated with his original arrest and is requesting, as I read it, for Mr. Ward to change his previous testimony, or his previous statement, or statements. He's wanting Mr. Ward to advise the wife, so she won't be caught off guard, and tell her to say what I told you, and then he discusses whether or not the jail phones have audio; and in one of the letters, he tells Mr. Ward to study this like it's a test. It is clear from me [sic], without having it signed by Mr. Derrick Hills, that when you read the content of the letter, I can't imagine there's somebody else out there that would know so much about Mr. Hills' case and Mr. Hills' brother and sister-in-law, that he could write with this kind of detail and be asking for all of these things on behalf of Mr. Hills, if it ain't Mr. Hills.

We agree with the trial court's reasoning and find that it did not commit any error in concluding that Defendant was the author of the letters. Defendant's argument that the State failed to prove the letters were written by him is therefore without merit.

***Whether the Letters Were Extremely Prejudicial***

Defendant next argues that the trial court should not have allowed the letters to be admitted at trial because they were extremely prejudicial to him.

10

There is a "substantial risk of grave prejudice" to a defendant arising out of inadmissible other crimes evidence. *State v. Prieur*, 277 So.2d 126, 128 (La.1973). Defendant acknowledges, however, citing *State v. Silguero*, 608 So.2d 627 (La.1992), that when such evidence tends to prove a material issue and has independent relevance other than showing the defendant is of bad character, it may be admitted pursuant to certain statutory and jurisprudential limitations.

Louisiana Code of Evidence Article 404(B) provides exceptions to the general rule that evidence of other crimes, wrongs, or acts is not admissible, stating that such evidence may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident[.]" However, even if the evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

Defendant argues that the letters were highly prejudicial and had minimal evidentiary value. He maintains that the trial court erred in finding the letters were admissible as the prejudicial effect far outweighed any probative value of the letters.

The State has provided two alternative theories for why the two letters were admissible and relevant at trial: (1) the letters were a statement against interest under La.Code Evid. art. 804(B)(3); and (2) the letters constituted other crimes evidence relevant to the issue of identity under La.Code Evid. art. 404(B).

First, the State argues that the statements made by Defendant in the letters to Mr. Ward fall under the La.Code Evid. art. 804(B)(3) hearsay exception for

11

statements against interest, which provides that "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness:"[3]

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The State argues that Defendant's statements in the letters to his brother, Mr. Ward aka "Slug," showed his guilty conscience and his efforts to conceal his guilt by coaching his brother on how to alter his testimony. In support of this argument, the State refers to excerpts from the first letter, which opens with "Wassum Slug":

> Lil Brutha, if I ever needed a favor, I need one na. I need for u to say that I called and said, They killed Rachelle, and that he went through the woods, and that I was circling the area trying to catch him. . . . Study this like its a test, Lil Brutha.

The State notes that Mr. Ward submitted to an audio interview with a Rapides Parish detective the night of the incident. When this audio interview was played for the jury during the trial, it did not match the version of facts Defendant was attempting to get Mr. Ward to attest to via the letter.

The State then looks to the second letter, which, although addressed to Phaedra Ward, opens with the same "Wassum Slug", and again contains instructions directing his brother, Mr. Ward, on how to testify: "I don't know what happened with my other letter that was written to you? But anyway, how it went down. I called you and asked you to come to Opelousas, and to bring your weapon…."

---

[3] The State argued at the hearing on its pretrial motion for admissibility that Defendant was unavailable as a witness because he has the right not to take the stand.

The State's second and alternative theory is that the letters constitute "other crimes evidence," per La.Code Evid. art. 404(B),[4] and as such are relevant to the issue of identity. The State argues that the letters act as evidence of Defendant's obstruction of justice,[5] show that Defendant attempted to alter the outcome of the trial against him and identify him as the murderer. Additionally, the State submits that the contents of the letters do not relate to any crime other than the one that was before the jury. The contents show Defendant sought to conceal his identity as the shooter by encouraging his brother to falsely testify. Thus, the letters are also admissible under La.Code Evid. art. 404(B).

Defendant has argued in his brief that the prejudicial effect of the letters outweighs their probative value. No evidence was presented that either Corey or Phaedra Ward had any knowledge of these letters. In fact, the jail confiscated them before they could be mailed to the recipients. Neither Corey Ward nor Phaedra Ward

---

[4] Louisiana Code of Evidence Article 404(B)(1)(a):

> Except as provided in Article 412 or as otherwise provided by law, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

[5] Louisiana Revised Statutes 14:130.1 provides, in pertinent part:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
> . . . .
>
> (4) Inducing or persuading or attempting to induce or persuade any person to do any of the following:
>
> (a) Testify falsely or, without right or privilege to do so, to withhold any testimony.

13

testified because the parties stipulated that Mr. Ward's audio interview would be admitted at trial in lieu of him testifying before the jury. That interview was conducted the night of the incident, almost two years before the letters were written. Defendant acknowledges that had he testified at trial, the letters would have been admissible on cross-examination by the State. He argues, however, that without the testimony at trial of himself, Corey Ward, or Phaedra Ward, the letters should not have been admitted.

The State has cited *State v. Smith*, 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, *writ denied*, 97-314 (La. 6/30/97), 696 So.2d 1004, wherein the trial court admitted as evidence letters written by the defendant. In *Smith*, this court found that the statements made by the defendant in his letters were admissions and contained statements against interest, had independent relevance, and were not admitted for the purpose of portraying the defendant's bad character. Thus, they were not erroneously admitted.

There are other cases in which the courts have allowed letters written by the defendant to be admitted as evidence at trial. In *State v. Odenbaugh*, 10-268 (La. 12/6/11), 82 So.3d 215, *cert. denied*, 568 U.S. 829, 133 S.Ct. 410 (2012), the supreme court upheld the admission of two letters written by the defendant, one in which the defendant implicitly admitted to shooting the victim and expressed a desire to escape from jail and finish the job. In *State v. Everett*, 11-714 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, *writs denied*, 12-1593, 12-1610 (La. 2/8/13), 108 So.3d 77, the fourth circuit upheld the introduction of the defendant's letter to his grandmother, which established the defendant's residence at the address where the search warrant was executed. And in *State v. Campbell*, 46-888 (La.App. 2 Cir. 3/14/12), 86 So.3d 204, *writ denied*, 12-1059 (La. 10/26/12), 99 So.3d 641, the

second circuit upheld the trial court's finding that the defendant's letters to the victim contained no prejudicial reference to other crimes evidence, reasoning that, in context, the defendant's comments regarding putting his hands on the victim related to the crime at hand and, therefore, was not a reference to "other" crimes, wrongs, or bad acts.

In this case, the trial court gave the following reasons for finding that Defendant's two letters were admissible as evidence at trial:

> Certainly, any time there's 404(B) evidence offered, there is prejudice, otherwise there wouldn't be a need to have a hearing. That's why we have them. We know they're prejudicial, that's why the State wants to use them. The question is, is there probative value? There certainly is probative value any time you have someone accused of the crime for which Mr. Hills is accused of, and you have these types of correspondence to family members of the defendant requesting that they now alter, either alter previous statements, or make statements that weren't made before, to argue that this correspondence was to refresh their memory. Yes, I can argue that the Probable Cause Affidavit might be, but not when the letters point out something completely different from the Probable Cause Affidavit that is requested by the author. So I find that the probative value does, in fact, outweigh the prejudicial effect, and I rule both Exhibits A and B that were submitted here today, to be admissible for the trial of this matter.

Again, we find that the trial court's reasoning is correct. As such, we find that the trial court did not err in finding the letters to be admissible at trial and Defendant's assignment of error is without merit.

## DECREE

For the foregoing reasons, Defendant Derrick T. Hill's conviction and sentence are affirmed.

**AFFIRMED.**

15